Michael A. Jones, State Bar #27311
Cody D. Vandewerker, State Bar #33385
**ALLEN BARNES & JONES, PLC**
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
Email: mjones@allenbarneslaw.com
cvandewerker@allenbarneslaw.com

Attorneys for the City of Los Angeles

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>ARDENT CYBER SOLUTIONS, LLC fka AVENTADOR UTILITY SOLUTIONS LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:20-bk-06722-PS<br><br>**STATEMENT OF POSITION AND RESERVATION OF RIGHTS REGARDING GOVERNMENT'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS** |

The City of Los Angeles, including by and through its Department of Water and Power (collectively, the "**City**"), hereby files this *Statement of Position and Reservation of Rights Regarding Government's Notice of Motion and Motion to Stay Proceedings* ("**Motion to Stay**") [Dkt. No. 46]. The City supports the United States of America's ("**Government**" or "**USA**") desire to protect the integrity of its investigation and will continue to support the Government's efforts. The City does not oppose the Government's Motion to Stay. However, the City believes that there is a need for clarification as to some of the likely and practical consequences of the USA's requested relief. Ardent Cyber Solutions, LLC's ("**Debtor**") case is an active Chapter 11 case subject to deadlines that continue to run, and there are ongoing post-petition obligations. The Motion to Stay does not discuss how these deadlines and continuing obligations will be impacted. For example, will the Debtor be required to comply with the exclusivity deadlines contained in § 1121 and file monthly operating reports, and will U.S. Trustee's fees continue to accrue? At the same time, any order of this Court should provide the parties certainty to avoid disputes and motion practice about what issues can advance and the

subject of testimony.

Additionally, it seems an odd outcome that the Debtor will receive elongated protection from creditors by an indefinite automatic stay and have no obligation to advance the bankruptcy case while creditors are left with uncertainty as to the deadlines to file proofs of claims or to pursue non-dischargeable claims. Notably, Mr. Paradis, the Debtor's principal, did not exercise his Fifth Amendment rights at his 341 meeting of creditors or the Debtor's 341 meeting of creditors, and the City did not ask him any questions related to his assertion of the Fifth Amendment in other cases. *See* Mr. Paradis' 341 Meeting of Creditors Transcript, attached as **Exhibit A**.[1] This issue has not actually arisen in either of the bankruptcy cases. Accordingly, to the extent that a stay is ordered, the City requests that the bankruptcy automatic stay of 11 U.S.C. 362(a) be lifted as to all creditors.

DATED: August 7, 2020.

**ALLEN BARNES & JONES, PLC**

*/s/ MAJ #27311*
Michael A. Jones
Cody D. Vandewerker
1850 N. Central Ave. Suite 1150
Phoenix, Arizona 85004
Attorneys for the City of Los Angeles

**E-FILED** on August 7, 2020 with the U.S. Bankruptcy Court and copies served via ECF notice on all parties that have appeared in the case.

**COPY** mailed the same date via U.S. Mail to:

Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003-1706

**COPY** e-mailed the same date to:

Christopher J. Pattock
United States Trustee
230 N 1st Ave, Suite 204
Phoenix, AZ 85003
christopher.j.pattock@usdoj.gov
*U.S. Trustee*

---

[1] Mr. Paradis also did not exercise his 5th Amendment rights at the Debtor's 341 Meeting of Creditors nor were any questions asked regarding his 5th Amendment rights.

Allan NewDelman
Allan D NewDelman PC
80 E. Columbus Ave.
Phoenix, AZ 85012
anewdelman@adnlaw.net
*Attorney for Debtor*

Nicole M. Goodwin, Esq.
Greenberg Traurig, LLP
2375 E. Camelback Road, Ste. 700
Phoenix, AZ 85016
goodwinn@gtlaw.com
*Attorneys for CyberGym Control Ltd.*

Howard J. Steinberg, Esq.
Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
steinbergh@gtlaw.com
*Attorneys for CyberGym Control Ltd.*

Diana May Kwok
United States Attorney's Office
312 N Sprint St, 13th Floor
Los Angeles, CA 90012
diana.kwok@usdoj.gov

*/s/ Misty Vasquez*

# Exhibit A

**In The Matter Of:**

*In re: Paul Oliva Paradis vs.*

---

*Section 341(a) meeting*

*July 7, 2020*

---

*Glennie Reporting Services, LLC*

*1555 East Orangewood Avenue*

*Phoenix, Arizona 85020*

*602.266.6535 Office 877.266.6535 Toll Free*

*www.glennie-reporting.com office@glennie-reporting.com*

Original File 070720 PP.txt

**Min-U-Script® with Word Index**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

In re: ) Chapter 11
)
PAUL OLIVA PARADIS, ) Case No.
) 2:20-bk-06724-MCW
Debtor. )
)
___________________________________)

REPORTER'S TRANSCRIPT OF ELECTRONIC PROCEEDINGS

SECTION 341(a) MEETING

July 7th, 2020
9:30 a.m.

Glennie Reporting Services, LLC
1555 East Orangewood Avenue
Phoenix, Arizona 85020-5130

Prepared by:
Jennifer Honn, RPR
Arizona CR No. 50885

602.266.6535
www.glennie-reporting.com

I N D E X

| WITNESS | PAGE |
|---|---|
| PAUL PARADIS | |
| Examination by Mr. Cross | 15 |
| Examination by Mr. Cosman | 19 |
| Examination by Mr. Jones | 20 |

INDEX TO EXHIBITS

| Description | Page |
|---|---|
| (No Exhibits Marked.) | |

REPORTER'S TRANSCRIPT OF ELECTRONIC PROCEEDINGS, SECTION 341(a) MEETING, was reported from electronic media by JENNIFER HONN, Registered Professional Reporter and a Certified Reporter in and for the State of Arizona.

APPEARANCES:

For Debtor:

ALLAN D NEWDELMAN PC
Mr. Allan D. NewDelman
80 East Columbus
Phoenix, Arizona 85012

ROBERTA J SUNKIN PC
Ms. Robert J. Sunkin
PO Box 233
Waddell, Arizona 85355

For Sub-Chapter V Trustee:

CROSS LAW FIRM PLC
Mr. James E. Cross
1850 North Central Avenue
Suite 1150
Phoenix, Arizona 85004

For Axis Bank:

PERKINS COIE LLP
Mr. Bradley Cosman
2901 North Central Avenue
Suite 2000
Phoenix, Arizona 85012

For City of Los Angeles, ca:

ALLEN BARNES & JONES PLC
Mr. Michael A. Jones
1850 North Central Avenue
Suite 1150
Phoenix, Arizona 85004

(Beginning of recording.)

MS. GIAIMO: Okay. Good morning. This is Jennifer Giaimo. We are here for the meeting of creditors in the matter of Paul Paradis, Case No. 2-06724.

Excuse me. Whoever doesn't have their phone muted, please mute. Does everybody have their phone on mute? Okay. Good.

So it's -- I'm here -- we are here for the Section 341(a) meeting of creditors in the case of Paul Paradis, Case No. 2-06724.

Today is July 7th, and the time is approximately 9:30 a.m.

I am going to now take appearances for the debtor. I am going to ask Allan to make his appearance first, Allan NewDelman, and then RJ, if you can make yours. So, first, let's start with that.

MR. NEWDELMAN: Okay. Good morning. Allan NewDelman on behalf of the Chapter 11 debtor.

MS. SUNKIN: And this is Roberta J. Sunkin also on behalf of the debtor.

MS. GIAIMO: RJ, can you repeat your last name and say it slowly, please?

MS. SUNKIN: I have a mask on so it must be muted. Okay. It's Roberta J. Sunkin.

Case 2:20-bk-06722-PS Doc 54 Filed 08/07/20 Entered 08/07/20 14:50:20 Desc Main Document Page 6 of 20

Page 5

MS. GIAIMO: Spell that, please.

MS. SUNKIN: S as in Sam, U, N as in Nancy, K-I-N as in Nancy.

MS. GIAIMO: Okay. Okay. Now I -- I need, Mr. Paradis, you are on the line; correct?

MR. PARADIS: Yes, I am.

MS. GIAIMO: Okay. And now I'm going to take appearances, and I'm going to actually call the names of the people that I believe are on the line. If when I'm done I haven't called your name, then we'll have to just deal with people saying who they are.

I'm going to start with the Sub-Chapter V trustee, and -- and let me just point out really quickly to everybody, this is being recorded, but through my phone onto my computer. So please, to the extent that you can, speak a little bit higher. Don't yell obviously, but I need you to speak a little bit louder and try not to be, if you're on speakerphone, it would be better if you're not on speakerphone.

Unfortunately, I have to be on speakerphone so that I can have everybody recorded. But on your end, if you could take yourselves off of speakerphone, because we want to have a clear record in case anybody wants a transcript.

Okay. So let's start with the appearance,

Page 6

can we please have an appearance by the Sub-Chapter V trustee, please.

MR. CROSS: This is Jim Cross. Good morning. I am the Sub-Chapter V pool trustee in this case.

MS. GIAIMO: Thank you. And then the next person I believe we have on the line is Bradley Cosman. Brad, can you please make your appearance and say who you represent.

MR. COSMAN: Good morning. Brad Cosman of Perkins Coie, on behalf of the Axis Bank.

MS. GIAIMO: Okay. And I believe, is that all -- is that the only people we have on the line? Is there anybody who I have not --

MR. JONES: Jennifer, you've got -- you have -- Jennifer, you have Michael Jones --

MS. GIAIMO: Oh.

MR. JONES: -- of Allen, Barnes & Jones for the City of Los Angeles.

MS. GIAIMO: Sorry, I -- I mean, that -- okay. Got it. So Michael Jones, City of Los Angeles. Okay. Sorry about that. Okay. So let me just go through the appearances, and if I've not called your name, please state so.

Allan NewDelman for the debtor.

Page 7

Roberta J. Sunkin for the debtor.

Paul Paradis for himself. He is the debtor.

Jim Cross for the Sub-Chapter V trustee -- or who is the Sub-Chapter V trustee.

Hold on one second. Hold on. Mark, can you take the dogs outside, please? Just take them outside. I'm recording this. Thank you. Sorry about that.

And then we have Bradley Cosman with Axis Bank.

And Michael Jones with the City of Los Angeles.

Is that correct? Okay. No other appearances.

So I'm going to administer the oath. Mr. Paradis, do you understand that the testimony that you are going to give today is going to be under oath and subject to penalty of perjury?

MR. PARADIS: Yes, I do.

MS. GIAIMO: Okay. And are you aware of any reason why your testimony -- why you would not be able to testify truthfully today?

MR. PARADIS: No.

MS. GIAIMO: Do you have any -- have you

Page 8

been under the influence of medications or other drugs that might impact your ability to testify truthfully or recollect things today?

MR. PARADIS: No.

MS. GIAIMO: No, okay. Having said that, I'm going to ask that -- and I trust that you will raise your right hand, please, and ask do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth and nothing but the truth?

MR. PARADIS: I do.

MS. GIAIMO: Okay. Okay. And all right. So, Mr. Paradis, I'm just going to ask you a couple of basic questions because I know that there are other people on the line that have many questions for you.

So, first, let me ask, when you filed this case, you know that there were schedules of assets and liabilities that were filed; correct?

MR. PARADIS: Yes.

MS. GIAIMO: And are you the person that provided all of the information to whoever inputted into, you know, into the form by typing it in?

MR. PARADIS: Yes, I am.

MS. GIAIMO: And how did you do that? Just logistically did you fill out the forms with handwriting and send them back to your attorney, or how did you do

it?

MR. PARADIS: Yeah, I -- I met with the attorney and provided the information. Some of it provided in writing. Other was just provided verbally.

MS. GIAIMO: Okay. After every -- all the information was provided and after all the information was input into the forms in, you know, typewritten format, did you look over and read what was input into the forms?

MR. PARADIS: Yes, I did.

MS. GIAIMO: Okay. And you made sure that everything that was input was done so accurately?

MR. PARADIS: Yes, I did.

MS. GIAIMO: Okay. And so when you looked it over, there was nothing to your knowledge that was incorrect or incomplete?

MR. PARADIS: That's correct. To the best of my knowledge, it was all complete and accurate.

MS. GIAIMO: Okay. Well, you went -- and you're saying that you did read through it on your own, though, and make sure everything was put in properly?

MR. PARADIS: Yes, I did.

MS. GIAIMO: Okay. And the same for the statement of financial affairs. Is that the exact same way that the procedure went for you filling out that

information?

MR. PARADIS: Yes, that's correct.

MS. GIAIMO: Okay. And so on that one -- on both of those forms, you were confident with your attorney that he -- he or she would be able to, you know, answer any questions you had about answering them properly; correct?

MR. PARADIS: Yes.

MS. GIAIMO: Okay. All right. And while you're sitting here today, you don't have any notes that you're looking at to -- to read from, do you?

MR. PARADIS: No, I do not.

MS. GIAIMO: Okay. To the extent that you are going to read from notes, you would need to let us know that, okay? Otherwise, your testimony should just be based on your recollection.

MR. PARADIS: Yeah, I don't have any notes.

MS. GIAIMO: Okay. And just briefly, can you tell me what prompted the bankruptcy filing?

MR. PARADIS: Yeah. The -- there's a related bankruptcy, and my inability to procure work on a continued basis caused my filing bankruptcy.

MS. GIAIMO: Okay. But your Schedule I indicates that you are receiving $8,000 per month approximately; correct? From --

MR. PARADIS: Yeah, I mean, I'm working in another job now, yes.

MS. GIAIMO: Okay. So what -- when you -- when did you start this new job that you're getting -- it's about $8,000 a month that you're receiving for compensation; correct?

MR. PARADIS: Yes, that's right. The date was end of February, beginning of March.

MS. GIAIMO: Okay. So -- and what's the position that you're working at now?

MR. PARADIS: I'm a contract processor, contract negotiator.

MS. GIAIMO: For whom?

MR. PARADIS: For a company called Pro Unlimited, Inc.

MS. GIAIMO: So you're -- you're a contractor? Now, I understand you're a lawyer by trade originally; correct?

MR. PARADIS: Correct.

MS. GIAIMO: So are you providing contract legal services to Pro Unlimited, Inc.?

MR. PARADIS: I'm not providing legal services. I'm an employee that does what they call contract processing.

MS. GIAIMO: What does that mean?

MR. PARADIS: It's not a -- it's not a -- there are contracts that need to be put through a computer system, and you process them through a computer system and provide different parts of an organization with information regarding the contracts.

MS. GIAIMO: Okay. Like contracts with whom and for what, general -- like in general?

MR. PARADIS: Depending whatever the -- the customers are, you provide information concerning various contracts about items that have been purchased.

MS. GIAIMO: Okay. So -- so that's what I'm saying. Like what's -- what are the services that Pro Unlimited, Inc., is providing or the -- the goods that they're selling to the public? What is it?

MR. PARADIS: It -- Pro Unlimited, Inc. is what they call a Professional Employer Organization, PEO. So they have people working for them that they hire out to different entities and companies to provide services that -- that Pro Unlimited, Inc.'s client may needs.

MS. GIAIMO: So is Pro Unlimited, Inc., somewhat like a -- like a temp agency that sends out temporary workers to work for other companies? Is that what you're saying?

MR. PARADIS: In effect, but it's not really temp. It's more durational.

MS. GIAIMO: Okay. So your -- you are not a person that they put -- that they placed in another -- in another position. You are actually doing work for the company itself? Like --

MR. PARADIS: No, I'm paid by Pro -- I'm paid by Pro Unlimited, Inc., to do the work that's assigned to me.

MS. GIAIMO: Okay. What I'm saying is that if they're putting the -- have you been --

(Interruption.)

MS. GIAIMO: Excuse me?

The question is, Mr. Paradis -- is, Allan, are you -- is somebody not on mute? Does somebody -- was somebody trying to say something? No.

I'm just saying that you were not hired out to another company by Pro Unlimited, Inc.; right? You do your work for Pro Unlimited, Inc.?

MR. PARADIS: No, I -- I -- I was hired by Pro Unlimited, Inc., to be assigned to various companies that they assign me to do work for.

MS. GIAIMO: Oh, okay. So do you -- like this Pro Unlimited, Inc., do you know who owns that company? Is it one -- is it a single owner that owns it? Are there a number of shareholders? Do you know anything about that?

MR. PARADIS: I have no idea.

MS. GIAIMO: How did you --

MR. PARADIS: (Indiscernible).

MS. GIAIMO: How did you get the job? How did you even find out about it?

MR. PARADIS: Through advertising that I saw online.

MS. GIAIMO: Okay. And so you're getting paid $8,000 as a contract worker; correct?

MR. PARADIS: Correct.

MS. GIAIMO: So you're getting paid, like they're issuing you forms 1099?

MR. PARADIS: No. W-2s.

MS. GIAIMO: That's -- that's not a contract worker.

MR. PARADIS: An employee of Pro -- yeah, I'm telling you I'm an employee of Pro Unlimited, Inc.

MS. GIAIMO: Okay. That's not what you said.

MR. PARADIS: (Indiscernible).

MS. GIAIMO: You said you were a contractor. Okay. And you are a lawyer. So I just want to be clear. You're an employee that gets W-2s, not --

MR. PARADIS: Right.

MS. GIAIMO: -- a contractor? Okay.

I'm going to just at this point -- I'm going to turn this over first to Mr. Cross to allow him to ask his questions. And just to let everyone know, I have to be off of this by 10:30, so let me just see. So Jim, you are going to ask questions; correct?

MR. CROSS: Yes, I have a few.

MS. GIAIMO: Okay. And then Bradley Cosman, are you going to ask questions?

MR. COSMAN: I might ask just a couple.

MS. GIAIMO: And, Michael Jones, you are going to ask questions; correct?

MR. JONES: Yes.

MS. GIAIMO: Okay. So let's just try to limit it if you can, you know, the first round here for 10 minutes each, just so that everybody gets at least 10 minutes.

All right. So, Mr. Cross, please, if you can proceed with your questions.

MR. CROSS: Sure.

EXAMINATION

BY MR. CROSS:

Q. Good morning. We've spoken before, haven't we?

A. Yes, we have.

Q. I just wanted to follow up on a couple of things

that we had talked about last week.

First of all, you're in the process of listing both of the real properties, the residences that are scheduled in your statement schedule?

A. That's correct.

Q. And one of those is located in, I believe, it's Rancho Mirage, California?

A. Yes, that's correct.

Q. And the other is in Nashville, Tennessee, or Memphis? I can't remember.

A. Nashville.

Q. Nashville, okay. And what have you done to get those properties listed?

A. Spoken with the Realtors, spoken with my counsel, put my counsel in touch with the Realtor. And to my understanding based on those conversations with the Realtor, that the properties, both properties, will be listed this week.

Q. Okay. And what is your opinion of value on those properties? You've got values listed in the schedules. Is that your belief as to what the properties are worth?

A. Yes. Based on discussions with the Realtor.

Q. Okay. And have you had any independent appraisals or brokers' opinions of value performed on

Page 17

these properties?
A. No. I'm waiting for those on both properties. I've asked the Realtor to obtain those, and I'm waiting for those. We should have those this week.
Q. Okay. And when you have those, would you mind supplying copies to me?
A. Absolutely not. That's no problem at all. Happy to supply them.
Q. Great. Okay. As far as your plan of reorganization in your personal case, is it my understanding that you intend to sell these properties and use the proceeds from these properties to pay off the debt owning to Axis Bank as well as the debt owing to the Internal Revenue Service?
A. Yes. And to the State of California for taxes as well.
Q. That's right. And that's about a half a million dollars to the California Board of Franchise?
A. That's correct. Plus, there's also some taxes owed to the -- I believe the City of Rancho Mirage for real estate taxes as well.
Q. Okay. And there's also a fair amount of unsecured debt owing to credit cards?
A. That's correct.
Q. And do you plan to pay a portion of that as well

Page 18

under your plan?
A. I'm going to defer to my counsel on that.
MR. NEWDELMAN: Yes. We'll be preparing most likely a plan that calls for the liquidation of two -- of the real estate, California and Tennessee, supplemented by the debtor's income if it becomes a positive cash flow. And we'll designate, most likely, 36 months of cash flow to be available (indiscernible) plan. So it's two sales and income for 36 months.
BY MR. CROSS:
Q. Okay. And, Paul, we'd talked about the fact that you're -- you've got this current employment with the employer that we were just talking about earlier. Do you intend to return to your practice of law at any point in the near future?
A. If I can. Right now, I've not been able to secure legal employment.
Q. And why is that, sir?
A. There's a lot of negative news. Let's leave it there. Lot of negative news right now.
Q. Okay. And are you referring to the dispute with the City of Los Angeles Fire and Water District?
A. Yes, I am.
MR. CROSS: Okay. Judge, I have no further questions.

Page 19

MS. GIAIMO: Okay. Thanks very much, Jim.
I believe next up we'll have Mr. Bradley Cosman for Axis -- on behalf of Axis Bank.
MR. COSMAN: Thanks.

EXAMINATION
BY MR. COSMAN:
Q. Hi, my name is Brad. Most of my questions were already addressed by Mr. Cross, but I did have one question.
The proceeds of the loan from Axis Bank, were those used to acquire or purchase the Rancho Mirage property?
A. Yes.
MR. COSMAN: Thank you. No further questions.
MS. GIAIMO: Okay. And then next up we have Mr. Jones on behalf of the City of Los Angeles.
And I can say this, you know, now feel free to use more than 10 minutes because we have time since Mr. Cross and Mr. Cosman's questions were so short.
MR. JONES: Morning. For the record, Michael Jones, Allen, Barnes & Jones, counsel for the City of Los Angeles.
* * * * *

Page 20

EXAMINATION
BY MR. JONES:
Q. Mr. Paradis, you recognize you're still under oath?
A. Yes.
Q. How long have you resided in Arizona?
A. Since February 2020.
Q. Do you intend to remain in Arizona?
A. Yes, I do.
Q. When was is the last time you lived in Rancho Mirage, California?
A. Prior to February.
Q. On page 33 of your bankruptcy schedules, you claim a homestead exemption in Rancho Mirage, California, property; is that correct?
A. I don't know. I don't have the document in front of me.
Q. Do you have any reason to dispute that your bankruptcy schedule states on page 33 that you claim a homestead exemption in the Rancho Mirage, California, property?
A. As I said, I don't have the document in front of me. I can't answer the question.
Q. You don't have the bankruptcy schedules with you?

Page 21

MS. GIAIMO: Well, listen.
MR. NEWDELMAN: I have the schedules in front of me. This is Allan NewDelman. The debtor did take a California exemption for $75,000 on Schedule C, if that helps.
BY MR. JONES:
Q. Mr. Paradis, do you agree with your counsel's statement?
A. I have no reason to disagree with him.
Q. So you agree? On page 21, your bankruptcy schedule states you're a creditor and contemporaneously filed Ardent Cyber Solutions, LLC, bankruptcy case and that you are owed $500,000; is that accurate?
A. Yes, it is.
Q. Page 61 of your bankruptcy schedule, it states that you, and I'll use your word, "infused cash into Ardent over the past two years in a total amount of $1.9 million." Is that accurate?
A. Yes, it is.
Q. Why did you infuse $1.9 million into Ardent over the last two years?
A. For operating purposes.
Q. Such as?
A. For operating purposes, to operate the business.
Q. Like what? Give me an example.

Page 22

A. Payroll.
Q. Page 61 of your bankruptcy schedules, you, in your word, "infused cash into Paradis Law Group, PLLC, over the past two years in the total amount of $2.6 million." Is that accurate?
A. Yes.
Q. Why? Why did you infuse that cash?
A. For operating purposes.
Q. What -- what type of operating purposes?
A. Again, payroll, among other things.
Q. Page 63 of your bankruptcy schedules, Paradis Law Group ceased operations December 2019. Is that accurate?
A. Yes.
Q. Why did it cease operations in December 2019?
A. No business.
Q. Did it have any assets when it ceased operations?
A. No.
Q. It didn't have any receivables?
A. No.
Q. Didn't have any hard assets?
A. No hard assets.
Q. When were you divorced?
A. I don't see how that's relevant to any of this.

Page 23

Q. This bankruptcy is about you personally. When were you divorced?
A. Prior to filing my bankruptcy. Ask your next question.
Q. I'm not --
MS. GIAIMO: Excuse me, Mr. Paradis, this is Jennifer Giaimo with the U.S. Trustee's Office. You need to answer that question. This is your personal bankruptcy, and this is an opportunity that the creditors are allowed to have to ask you questions. So you need to answer that question.
MR. NEWDELMAN: Maybe he's not comfortable with it, so it's a public record.
MR. JONES: It doesn't matter if he's comfortable with it.
MS. GIAIMO: I'm -- I'm going to interject here. This is -- this is Jennifer Giaimo on behalf of the U.S. Trustee. Mr. Paradis, this is your personal bankruptcy, and it is relevant, and you need to answer these questions. This is the only opportunity -- or this is the initial opportunity that the creditors have to ask you questions. So please answer the question.
MR. PARADIS: It's a public record, Mr. Jones.
MS. GIAIMO: The -- you should answer the

Page 24

question, Mr. Paradis.
MR. PARADIS: Allan?
MR. NEWDELMAN: I would not -- if it's a public record, if you know the date of your divorce, Paul, give him the date.
MR. PARADIS: 2015.
MR. NEWDELMAN: It's a public record.
BY MR. JONES:
Q. Have any assets transferred to your ex-wife in the divorce?
MR. NEWDELMAN: You can answer.
MR. PARADIS: No, that's not a public record. That's not a public record. I'm not answering that.
MS. GIAIMO: Okay. I'm going to intervene here. This is your personal bankruptcy, and regardless of whether it was public record, you need to answer the questions about your transfers of -- excuse me, whoever else is talking, please do not interrupt me. If it's Mr. NewDelman, please put yourself on mute until I'm finished speaking.
Mr. Paradis, transfers or -- of assets are absolutely 100 percent relevant and pertinent to your bankruptcy case. You must answer the question. The only reason that you may refuse to answer a question when you

Page 25

are under examination is based on a privilege.

If you want to assert a privilege, you are free to do so. But unless you have a privilege, you do need to answer the questions that are being posed to you. Thank you.

BY MR. JONES:

Q. The question was --

A. Yeah.

Q. -- were any assets transferred to your ex-wife in the divorce?

A. In connection with the divorce was the settlements.

Q. Did she receive assets in the divorce settlement?

A. Yes, she did.

Q. What did she receive?

A. I don't recall.

Q. Is there a document that lists what she received in the divorce settlement?

A. Yes, there is.

Q. What's that called?

A. I don't recall the exact name of the document.

Q. Do you have a copy of that document?

A. I don't believe so, actually.

Q. Who would have a copy of that document?

Page 26

A. Probably my counsel, but I'll have to check.

Q. What was your counsel's name?

A. My -- my divorce counsel.

Q. What was your divorce counsel's name?

A. Paul Goldhamer.

Q. And what firm is he with?

A. His own firm. I don't remember the exact name of the firm.

Q. What -- what city is he -- what city does he practice law from?

A. He's in New Jersey somewhere. I don't remember the city.

Q. And what state was -- was your divorce processed through? Was it New York?

A. New Jersey.

Q. New Jersey. Page 54 of your bankruptcy schedules list that you're losing $2,045.76 per month (indiscernible) in that income; is that accurate?

A. That's correct.

Q. And that's without paying any rent, which you prepaid for a year; is that accurate?

A. That's correct.

Q. And there's also no payments on account of mortgage, HOA or tax payments; is that accurate?

A. Not now.

Page 27

Q. Those aren't included in your net income on your bankruptcy schedules; correct?

A. Correct.

Q. Page 19 of your bankruptcy schedules list that you're holding only $13,985.04 in cash and accounts; is that accurate?

A. Yes.

Q. You filed your 2018 tax return with an addendum to your bankruptcy petition. That tax return's Schedule C shows that at least $7.8 million went to you from Ardent in 2018; is that accurate?

A. I don't have it in front of me, so I don't know what it says.

Q. Do you have any reason to doubt the accuracy of your 2018 tax return?

A. No.

Q. Have you amended your 2018 tax return?

A. No.

Q. Was your 2018 tax return filed with the IRS?

A. Yes.

Q. 2018 tax return Schedule C shows $1.1 million in depreciation expense related to Ardent; is that accurate?

A. Again, I don't know what it says. I don't have it in front of me.

Q. Do you have any reason to doubt that it says

Page 28

that?

A. It says what it says. I don't have it in front of me. I don't know what it says.

Q. What would depreciation expense related to Ardent consist of?

A. I -- I don't know. I'm not the accountant who prepared the return.

Q. Are you aware of whether depreciation would be a cash item or just an accounting term that wouldn't actually be cash paid out?

A. Again, I'm not qualified to answer that. I don't know.

Q. You didn't pay federal taxes related to your 2018 tax return; correct?

A. I did pay some.

Q. How much?

A. I don't recall the exact amount.

Q. Your tax in 2018 was listed at $2,000,34 -- excuse me, $2,034,880. Is that correct?

A. (Indiscernible).

MS. GIAIMO: Mark, please let the dogs outside.

BY MR. JONES:

Q. Did you pay that amount?

A. (Indiscernible).

MS. GIAIMO: Just get them outside, and keep them outside.

MR. PARADIS: I did not pay the entire amount. I paid some --

MS. GIAIMO: That's okay.

MR. PARADIS: -- some amount. I don't recall the amount that I paid.

BY MR. JONES:

Q. Did you pay over a million dollars?

A. Again, I don't recall.

Q. Did you pay over $500,000?

A. I don't recall.

Q. Okay. Page 19 -- excuse me -- what happened to the moneys that you were paid from Ardent in 2018?

A. I was not paid any money from Ardent in 2018. Ardent didn't exist in 2018. We've already had this discussion on the prior call, Mr. Jones.

Q. You're aware that Aventador Utility Solutions, LLC, changed its name to Ardent; correct?

A. Yes, I am.

Q. Okay. So you'd agree with me that they're the same entity with a name change?

MR. NEWDELMAN: Objection.

MR. JONES: Objection to what?

MR. NEWDELMAN: Calls for a legal

conclusion.

MR. JONES: He's a lawyer.

MR. NEWDELMAN: So what? He could be a lawyer that has no knowledge of the issue --

MR. JONES: Well, let me rephrase, then. Because -- if he can't understand it.

BY MR. JONES:

Q. Is -- is Ardent -- did Aventador Utility Solutions, LLC, change its name?

A. Yes, it did.

Q. What did it change its name to?

A. Ardent Cyber Solutions, LLC.

Q. Did Aventador Utility Solutions dissolve?

A. I don't know what you mean by "dissolve," so I don't know how to answer that question.

Q. Did it -- was it shut down under California law?

A. I -- I don't know.

Q. Is Ardent the same as Aventador with a different name?

A. I sold Aventador, and then the people that bought Aventador from me changed the name to Ardent. So I don't know the answer to your question.

MR. JONES: Jennifer, just for the record, we -- we have a -- the 341 meeting with Ardent was shut down and continued. Mr. Paradis refused to answer

questions about Ardent when it was named Aventador, so essentially anything before 2019. So I think that's -- that's why we're landing here.

BY MR. JONES:

Q. Mr. -- Mr. Paradis, do you intend to again refuse to answer any questions related to Ardent prior to 2019?

A. Yes, I do, for the same reasons we discussed on the prior call.

Q. So if I ask you questions related to payments from Ardent to you prior to 2019, you're going to refuse to answer all those questions?

A. That's correct.

MR. JONES: Jennifer, I -- I ask that we -- we get a ruling related to this issue, too. That the key issue seems to be that Mr. Paradis believes that because Aventador changed its name to Ardent that he need not answer any questions related to Ardent prior to 2019 and that somehow they're totally separate and irrelevant to the bankruptcy case.

Chris Paddock continued the 341 meeting. We agreed that we would get an order from the judge to compel testimony related to those issues. And I -- I mean, it's going to restrict -- obviously restrict questions and issues in this 341 if he's going to refuse

to answer questions related to his 100 percent membership interest in Ardent from which he received $7.8 million in 2018.

MS. GIAIMO: Okay. I -- I agree with that, Mr. Jones. I think that's a good way of handling that. Let's pick a date to reschedule this. So let's see. We typically reschedule them for Thursdays. Oh, actually, what -- when -- when was the other one rescheduled for? I'll just do it right behind that.

MR. NEWDELMAN: Jennifer, we're scheduled to go back on the (indiscernible). We're scheduled to go back on a continued 341 meeting on the Ardent case on July 30th, which is on a Thursday, at 9:30. So probably tie it in to close to that meeting.

MS. GIAIMO: Yes. Okay. So July 30th at what time, Allan?

MR. NEWDELMAN: I think we're at 9:30 on the Ardent case.

MS. GIAIMO: 9:30. So I will say 10:00 a.m. for the Paradis case.

MR. NEWDELMAN: That will work here.

MS. GIAIMO: Okay. So we'll -- we'll issue a -- the minute entry that will reflect that this 341 is going to be continued until July 30th at 10:00 a.m.

I just -- I have one quick question.

Where -- where are you a member of the bar, Mr. Paradis?

MR. PARADIS: New York.

MS. GIAIMO: New York. Okay. All right. So I will -- this matter is not being concluded. It's going to be continued.

Is everybody -- does anybody have a problem that's on the line with the continuation date?

MR. CROSS: This is Jim Cross. No, I don't have a problem with it. It works for me, Jennifer.

MS. GIAIMO: Okay. Very good. Okay. So we will issue that minute entry that will be setting -- resetting this for July 30th. And at that time I will not be the attorney on it. Mr. Bernatavicius who is the counsel for the U.S. Trustee will be handling this. Okay?

MALE VOICE: Okay.

MS. GIAIMO: Thank you all. Thank you, everyone. I appreciate the cooperation. Have a good day.

MALE VOICE: Okay.

MR. PARADIS: Thank you. Bye-bye. Thank you.

MS. GIAIMO: Okay. Bye.

(End of recording.)



STATE OF ARIZONA )
COUNTY OF MARICOPA )

BE IT KNOWN that the foregoing proceedings are a full, true and accurate record of the previously recorded proceedings, all done to the best of my skill and ability; that the proceedings were transcribed and reduced to print under my direction.

I CERTIFY that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome hereof.

[ ] Review and signature was requested.
[ ] Review and signature was waived.
[X] Review and signature not required.
[ ] Review and signature was requested, but did not do so within 30 days after notification.

I CERTIFY that I have complied with the ethical obligations set forth in ACJA 7-206(F)(3) and ACJA 7-206 J(1)(g)(1) and (2).

Dated at Phoenix, Arizona, this 30th day of July, 2020.

____________________________
Jennifer Honn
Certified Reporter
Arizona CR No. 50885

I CERTIFY that GLENNIE REPORTING SERVICES, LLC, has complied with the ethical obligations set forth in ACJA 7-206.

____________________________
GLENNIE REPORTING SERVICES, LLC
Registered Reporting Firm
Arizona RRF No. R1035

In re: Paul Oliva Paradis vs. | Section 341(a) meeting July 7, 2020

## $

**$1.1 (1)** 27:21
**$1.9 (2)** 21:17,20
**$13,985.04 (1)** 27:5
**$2,000,34 (1)** 28:18
**$2,034,880 (1)** 28:19
**$2,045.76 (1)** 26:17
**$2.6 (1)** 22:4
**$500,000 (2)** 21:13;29:11
**$7.8 (2)** 27:10;32:2
**$75,000 (1)** 21:4
**$8,000 (3)** 10:24;11:5;14:9

## [

**[X] (1)** 34:9

## A

**ability (2)** 8:2;34:
**able (3)** 7:23;10:5;18:16
**Absolutely (2)** 17:7;24:23
**account (1)** 26:23
**accountant (1)** 28:6
**accounting (1)** 28:9
**accounts (1)** 27:5
**accuracy (1)** 27:14
**accurate (12)** 9:18;21:13,18;22:5,13;26:18,21,24;27:6,11,22;34:
**accurately (1)** 9:12
**ACJA (3)** 34:,12,19
**acquire (1)** 19:12
**actually (5)** 5:8;13:3;25:24;28:10;32:7
**addendum (1)** 27:8
**addressed (1)** 19:9
**administer (1)** 7:16
**advertising (1)** 14:6
**affairs (1)** 9:24
**affirm (1)** 8:8
**Again (5)** 22:10;27:23;28:11;29:10;31:5
**agency (1)** 12:21
**agree (4)** 21:7,10;29:21;32:4
**agreed (1)** 31:22
**Allan (10)** 3:,8;4:15,16,18;6:25;13:12;21:3;24:2;32:16
**ALLEN (3)** 3:22;6:18;19:23
**allow (1)** 15:2
**allowed (1)** 23:10
**amended (1)** 27:17
**among (1)** 22:10
**amount (8)** 17:22;21:17;22:4;28:17,24;29:4,6,7
**Angeles (7)** 3:21;6:19,21;7:13;18:22;19:18,24
**appearance (4)** 4:15;5:25;6:1,8
**APPEARANCES (5)** 3:6;4:14;5:8;6:23;7:15
**appraisals (1)** 16:25
**appreciate (1)** 33:18
**approximately (2)** 4:13;10:25
**Ardent (23)** 21:12,17,20;27:11,22;28:5;29:14,15,16,19;30:8,12,18,21,24;31:1,6,11,17,18;32:2,12,18
**ARIZONA (15)** 0:,,;3:,4,12,16,20,24;20:6,8;34:1,13,17,25
**assert (1)** 25:2
**assets (8)** 8:16;22:17,22,23;24:9,22;25:9,13
**assign (1)** 13:20
**assigned (2)** 13:7,19
**attorney (4)** 8:25;9:3;10:5;33:13
**available (1)** 18:8
**Aventador (8)** 29:18;30:8,13,18,20,21;31:1,17
**Avenue (4)** 0:;3:15,19,23
**aware (3)** 7:21;28:8;29:18
**Axis (7)** 3:17;6:11;7:10;17:13;19:3,3,11

## B

**back (3)** 8:25;32:11,12
**Bank (6)** 3:17;6:11;7:11;17:13;19:3,11
**BANKRUPTCY (23)** 0:;10:19,21,22;20:13,19,24;21:10,12,15;22:2,11;23:1,3,9,19;24:16,24;26:16;27:2,4,9;31:20
**bar (1)** 33:1
**BARNES (3)** 3:22;6:18;19:23
**based (4)** 10:16;16:16,23;25:1
**basic (1)** 8:13
**basis (1)** 10:22
**becomes (1)** 18:6
**Beginning (2)** 4:1;11:8
**behalf (6)** 4:19,21;6:11;19:3,18;23:17
**behind (1)** 32:9
**belief (1)** 16:21
**believes (1)** 31:16
**Bernatavicius (1)** 33:13
**best (2)** 9:17;34:4
**better (1)** 5:19
**bit (2)** 5:16,17
**Board (1)** 17:18
**both (4)** 10:4;16:3,17;17:2
**bought (1)** 30:21
**Box (1)** 3:
**Brad (3)** 6:8,10;19:8
**Bradley (5)** 3:;6:7;7:10;15:7;19:2
**briefly (1)** 10:18
**brokers' (1)** 16:25
**business (2)** 21:24;22:16
**Bye (1)** 33:23
**Bye-bye (1)** 33:21

## C

**ca (1)** 3:21
**California (9)** 16:7;17:15,18;18:5;20:11,14,20;21:4;30:16
**call (5)** 5:8;11:23;12:16;29:17;31:9
**called (4)** 5:10;6:23;11:14;25:21
**calls (2)** 18:4;29:25
**can (13)** 4:16,22;5:16,21;6:1,8;7:6;10:18;15:14,18;18:16;19:19;24:11
**cards (1)** 17:23
**Case (14)** 0:;4:4,10,11;5:23;6:5;8:16;17:10;21:12;24:24;31:20;32:12,18,20
**cash (8)** 18:7,8;21:16;22:3,7;27:5;28:9,10
**caused (1)** 10:22
**cease (1)** 22:15
**ceased (2)** 22:12,17
**Central (3)** 3:15,19,23
**Certified (2)** 3:4;34:
**CERTIFY (3)** 34:6,11,18
**change (3)** 29:22;30:9,11
**changed (3)** 29:19;30:21;31:17
**Chapter (2)** 0:;4:19
**check (1)** 26:1
**Chris (1)** 31:21
**City (11)** 3:21;6:19,21;7:12;17:20;18:22;19:18,24;26:9,9,12
**claim (2)** 20:14,19
**clear (2)** 5:23;14:23
**client (1)** 12:19
**close (1)** 32:14
**COIE (2)** 3:18;6:11
**Columbus (1)** 3:9
**comfortable (2)** 23:12,15
**companies (3)** 12:18,22;13:19
**company (4)** 11:14;13:4,16,23
**compel (1)** 31:23
**compensation (1)** 11:6
**complete (1)** 9:18
**complied (2)** 34:,11
**computer (3)** 5:15;12:3,3
**concerning (1)** 12:9
**concluded (1)** 33:4
**conclusion (1)** 30:1
**confident (1)** 10:4
**connection (1)** 25:11
**consist (1)** 28:5
**contemporaneously (1)** 21:11
**continuation (1)** 33:7
**continued (6)**

Min-U-Script® Glennie Reporting Services, LLC 602.266.6535 www.glennie-reporting.com (1) $1.1 - continued

10:22;30:25;31:21;32:12,24;33:5
**contract (6)** 11:11,12,20,24;14:9,15
**contractor (3)** 11:17;14:22,25
**contracts (4)** 12:2,5,6,10
**conversations (1)** 16:16
**cooperation (1)** 33:18
**copies (1)** 17:6
**copy (2)** 25:23,25
**Cosman (12)** 2:;3:;6:7,10,10;7:10;15:8,9;19:3,4,7,15
**Cosman's (1)** 19:21
**counsel (7)** 16:15,15;18:2;19:23;26:1,3;33:14
**counsel's (3)** 21:7;26:2,4
**COUNTY (1)** 34:2
**couple (3)** 8:12;15:9,25
**COURT (1)** 0:
**CR (2)** 0:;34:17
**credit (1)** 17:23
**creditor (1)** 21:11
**creditors (4)** 4:4,10;23:9,21
**Cross (17)** 2:4;3:,14;6:3,3;7:4;15:2,6,17,19,22;18:10,24;19:9,21;33:8,8
**current (1)** 18:12
**customers (1)** 12:9
**Cyber (2)** 21:12;30:12

## D

**date (5)** 11:7;24:4,5;32:6;33:7
**Dated (1)** 34:13
**day (2)** 33:19;34:13
**days (1)** 34:10
**deal (1)** 5:11
**debt (3)** 17:13,13,23
**Debtor (9)** 0:;3:7;4:15,19,21;6:25;7:1,3;21:3
**debtor's (1)** 18:6
**December (2)** 22:12,15
**defer (1)** 18:2
**Depending (1)** 12:8
**depreciation (3)** 27:22;28:4,8
**Description (1)** 2:
**designate (1)** 18:7
**different (3)** 12:4,18;30:18
**direction (1)** 34:5
**disagree (1)** 21:9
**discussed (1)** 31:8
**discussion (1)** 29:17
**discussions (1)** 16:23
**dispute (2)** 18:21;20:18
**dissolve (2)** 30:13,14
**DISTRICT (2)** 0:;18:22
**divorce (9)** 24:4,10;25:10,11,13,19;26:3,4,13
**divorced (2)** 22:24;23:2
**document (6)** 20:16,22;25:18,22,23,25
**dogs (2)** 7:7;28:21
**dollars (2)** 17:18;29:9
**done (4)** 5:10;9:12;16:12;34:4
**doubt (2)** 27:14,25
**down (2)** 30:16,25
**drugs (1)** 8:1
**durational (1)** 12:25

## E

**earlier (1)** 18:13
**East (2)** 0:;3:9
**effect (1)** 12:24
**ELECTRONIC (3)** 0:;3:1,2
**else (1)** 24:19
**employee (4)** 11:23;14:16,17,23
**Employer (2)** 12:16;18:13
**employment (2)** 18:12,17
**end (3)** 5:21;11:8;33:24
**entire (1)** 29:3
**entities (1)** 12:18
**entity (1)** 29:22
**entry (2)** 32:23;33:11
**essentially (1)** 31:2
**estate (2)** 17:21;18:5
**ethical (2)** 34:,
**even (1)** 14:5
**everybody (5)** 4:7;5:14,21;15:15;33:6
**everyone (2)** 15:3;33:18
**exact (4)** 9:24;25:22;26:7;28:17
**Examination (7)** 2:,4,5;15:21;19:6;20:1;25:1
**example (1)** 21:25
**Excuse (6)** 4:6;13:11;23:6;24:18;28:19;29:13
**exemption (3)** 20:14,20;21:4
**Exhibits (2)** 2:,
**exist (1)** 29:16
**expense (2)** 27:22;28:4
**extent (2)** 5:15;10:13
**ex-wife (2)** 24:9;25:9

## F

**fact (1)** 18:11
**fair (1)** 17:22
**far (1)** 17:9
**February (3)** 11:8;20:7,12
**federal (1)** 28:13
**feel (1)** 19:19
**few (1)** 15:6
**filed (5)** 8:15,17;21:12;27:8,19
**filing (3)** 10:19,22;23:3
**fill (1)** 8:24
**filling (1)** 9:25
**financial (1)** 9:24
**find (1)** 14:5
**finished (1)** 24:21
**Fire (1)** 18:22
**FIRM (5)** 3:14;26:6,7,8;34:
**first (6)** 4:16,17;8:15;15:2,14;16:2
**flow (2)** 18:7,8
**follow (1)** 15:25
**foregoing (1)** 34:3
**form (1)** 8:21
**format (1)** 9:8
**forms (5)** 8:24;9:7,9;10:4;14:12
**forth (2)** 34:,
**Franchise (1)** 17:18
**free (2)** 19:19;25:3
**front (6)** 20:17,22;21:3;27:12,24;28:2
**full (1)** 34:
**further (2)** 18:24;19:15
**future (1)** 18:15

## G

**general (2)** 12:7,7
**gets (2)** 14:23;15:15
**GIAIMO (70)** 4:2,3,22;5:1,4,7;6:6,12,17,20;7:21,25;8:5,11,19,23;9:5,11,14,19,23;10:3,9,13,18,23;11:3,9,13,16,20,25;12:6,11,20;13:1,8,11,21;14:2,4,8,11,14,18,21,25;15:7,10,13;19:1,17;21:1;23:6,7,16,17,25;24:15;28:21;29:1,5;32:4,15,19,22;33:3,10,17,23
**Glennie (3)** 0:;34:18,24
**Goldhamer (1)** 26:5
**Good (9)** 4:2,8,18;6:3,10;15:23;32:5;33:10,18
**goods (1)** 12:13
**Great (1)** 17:9
**Group (2)** 22:3,12

## H

**half (1)** 17:17
**hand (1)** 8:7
**handling (2)** 32:5;33:14
**handwriting (1)** 8:24
**happened (1)** 29:13
**Happy (1)** 17:8
**hard (2)** 22:22,23
**helps (1)** 21:5
**hereof (1)** 34:7
**hereto (1)** 34:
**Hi (1)**

Case 2:20-bk-06722-PS Doc 54 Filed 08/07/20 Entered 08/07/20 14:50:20 Desc
Main Document Page 16 of 20

19:8
**higher (1)** 5:16
**himself (1)** 7:2
**hire (1)** 12:17
**hired (2)** 13:15,18
**HOA (1)** 26:24
**Hold (2)** 7:6,6
**holding (1)** 27:5
**homestead (2)** 20:14,20
**Honn (3)** 0:;3:3;34:16

## I

**idea (1)** 14:1
**impact (1)** 8:2
**inability (1)** 10:21
**Inc (11)** 11:15,21;12:13,15, 20;13:6,16,17,19,22; 14:17
**included (1)** 27:1
**income (4)** 18:6,9;26:18;27:1
**incomplete (1)** 9:16
**incorrect (1)** 9:16
**Inc's (1)** 12:19
**independent (1)** 16:24
**INDEX (1)** 2:
**indicates (1)** 10:24
**Indiscernible (7)** 14:3,20;18:8;26:18; 28:20,25;32:11
**influence (1)** 8:1
**information (7)** 8:20;9:3,6,6;10:1; 12:5,9
**infuse (2)** 21:20;22:7
**infused (2)** 21:16;22:3
**initial (1)** 23:21
**input (3)** 9:7,8,12
**inputted (1)** 8:20
**intend (4)** 17:11;18:14;20:8; 31:5
**interest (1)** 32:2
**interested (1)** 34:
**interject (1)** 23:16
**Internal (1)** 17:14
**interrupt (1)** 24:19
**Interruption (1)** 13:10
**intervene (1)** 24:15
**into (7)** 8:20,21;9:7,8;21:16, 20;22:3
**irrelevant (1)** 31:19
**IRS (1)** 27:19
**issue (5)** 30:4;31:15,16;32:22; 33:11
**issues (2)** 31:23,25
**issuing (1)** 14:12
**item (1)** 28:9
**items (1)** 12:10

## J

**J1g1 (1)** 34:12
**James (1)** 3:
**Jennifer (12)** 0:;3:3;4:3;6:15,16; 23:7,17;30:23;31:14; 32:10;33:9;34:16
**Jersey (3)** 26:11,15,16
**Jim (5)** 6:3;7:4;15:5;19:1; 33:8
**job (3)** 11:2,4;14:4
**Jones (32)** 2:5;3:,22;6:15,16,18, 18,21;7:12;15:10,12; 19:18,22,23,23;20:2; 21:6;23:14,24;24:8; 25:6;28:23;29:8,17,24; 30:2,5,7,23;31:4,14; 32:5
**Judge (2)** 18:24;31:22
**July (7)** 0:;4:12;32:13,15,24; 33:12;34:

## K

**keep (1)** 29:2
**key (1)** 31:15
**K-I-N (1)** 5:3
**knowledge (3)** 9:15,18;30:4
**KNOWN (1)** 34:3

## L

**landing (1)** 31:3
**last (4)** 4:22;16:1;20:10; 21:21
**LAW (6)** 3:14;18:14;22:3,12; 26:10;30:16
**lawyer (4)** 11:17;14:22;30:2,4
**least (2)** 15:15;27:10
**leave (1)** 18:19
**legal (4)** 11:21,22;18:17; 29:25
**liabilities (1)** 8:17
**likely (2)** 18:4,7
**limit (1)** 15:14
**line (6)** 5:5,9;6:7,13;8:14; 33:7
**liquidation (1)** 18:4
**list (2)** 26:17;27:4
**listed (4)** 16:13,18,20;28:18
**listen (1)** 21:1
**listing (1)** 16:2
**lists (1)** 25:18
**little (2)** 5:16,17
**lived (1)** 20:10
**LLC (7)** 0:;21:12;29:19;30:9, 12;34:,24
**LLP (1)** 3:18
**loan (1)** 19:11
**located (1)** 16:6
**logistically (1)** 8:24
**long (1)** 20:6
**look (1)** 9:8
**looked (1)** 9:14
**looking (1)** 10:11
**Los (7)** 3:21;6:19,21;7:13; 18:22;19:18,24
**losing (1)** 26:17
**lot (2)** 18:19,20
**louder (1)** 5:17

## M

**MALE (2)** 33:16,20
**many (1)** 8:14
**March (1)** 11:8
**MARICOPA (1)** 34:2
**Mark (2)** 7:6;28:21
**Marked (1)** 2:
**mask (1)** 4:24
**matter (3)** 4:4;23:14;33:4
**may (2)** 12:19;24:25
**Maybe (1)** 23:12
**mean (5)** 6:20;11:1,25;30:14; 31:24
**media (1)** 3:3
**medications (1)** 8:1
**MEETING (8)** 0:;3:2;4:3,10;30:24; 31:21;32:12,14
**member (1)** 33:1
**membership (1)** 32:1
**Memphis (1)** 16:10
**met (1)** 9:2
**Michael (6)** 3:;6:16,21;7:12; 15:10;19:23
**might (2)** 8:2;15:9
**million (8)** 17:17;21:18,20;22:5; 27:10,21;29:9;32:2
**mind (1)** 17:5
**minute (2)** 32:23;33:11
**minutes (3)** 15:15,16;19:20
**Mirage (6)** 16:7;17:20;19:12; 20:11,14,20
**money (1)** 29:15
**moneys (1)** 29:14
**month (3)** 10:24;11:5;26:17
**months (2)** 18:8,9
**more (2)** 12:25;19:20
**morning (6)** 4:2,18;6:4,10;15:23; 19:22
**mortgage (1)** 26:24
**most (3)** 18:4,7;19:8
**much (2)** 19:1;28:16
**must (2)** 4:24;24:24
**mute (4)** 4:7,8;13:13;24:20
**muted (2)** 4:7,25

## N

**name (15)** 4:23;5:10;6:24;19:8; 25:22;26:2,4,7;29:19, 22;30:9,11,19,21;31:17
**named (1)** 31:1
**names (1)** 5:9
**Nancy (2)** 5:2,3
**Nashville (3)**

Case 2:20-bk-06722-PS Doc 54 Filed 08/07/20 Entered 08/07/20 14:50:20 Desc Main Document Page 17 of 20

16:9,11,12
**near (1)**
18:15
**need (10)**
5:4,17;10:14;12:2;23:8,10,19;24:17;25:4;31:17
**needs (1)**
12:19
**negative (2)**
18:19,20
**negotiator (1)**
11:12
**net (1)**
27:1
**new (7)**
11:4;26:11,14,15,16;33:2,3
**NewDelman (20)**
3:,8;4:16,18,19;6:25;18:3;21:2,3;23:12;24:3,7,11,20;29:23,25;30:3;32:10,17,21
**news (2)**
18:19,20
**next (4)**
6:6;19:2,17;23:3
**nor (1)**
34:
**North (3)**
3:15,19,23
**notes (3)**
10:10,14,17
**notification (1)**
34:10
**number (1)**
13:24

**O**

**oath (3)**
7:16,18;20:4
**Objection (2)**
29:23,24
**obligations (2)**
34:,
**obtain (1)**
17:3
**obviously (2)**
5:17;31:24
**off (3)**
5:22;15:4;17:12
**Office (1)**
23:7
**OLIVA (1)**
0:
**one (7)**
7:6;10:3;13:23;16:6;19:9;32:8,25
**online (1)**
14:7
**only (4)**
6:13;23:20;24:24;27:5
**onto (1)**
5:15
**operate (1)**
21:24
**operating (4)**
21:22,24;22:8,9
**operations (3)**
22:12,15,18
**opinion (1)**
16:19
**opinions (1)**
16:25
**opportunity (3)**
23:9,20,21
**Orangewood (1)**
0:
**order (1)**
31:22
**organization (2)**
12:4,16
**originally (1)**
11:18
**Otherwise (1)**
10:15
**out (8)**
5:13;8:24;9:25;12:17,21;13:15;14:5;28:10
**outcome (1)**
34:7
**outside (5)**
7:7,8;28:22;29:1,2
**over (8)**
9:8,15;15:2;21:17,20;22:4;29:9,11
**owed (2)**
17:20;21:13
**owing (2)**
17:13,23
**own (2)**
9:20;26:7
**owner (1)**
13:23
**owning (1)**
17:13
**owns (2)**
13:22,23

**P**

**Paddock (1)**
31:21
**Page (11)**
2:,2;20:13,19;21:10,15;22:2,11;26:16;27:4;29:13
**paid (9)**
13:5,6;14:9,11;28:10;29:4,7,14,15
**PARADIS (67)**
0:;2:3;4:4,11;5:5,6;7:2,17,20,24;8:4,10,12,18,22;9:2,10,13,17,22;10:2,8,12,17,20;11:1,7,11,14,19,22;12:1,8,15,24;13:5,12,18;14:1,3,6,10,13,16,20,24;20:3;21:7;22:3,11;23:6,18,23;24:1,2,6,12,22;29:3,6;30:25;31:5,16;32:20;33:1,2,21
**parties (1)**
34:
**parts (1)**
12:4
**past (2)**
21:17;22:4
**PAUL (8)**
0:;2:3;4:4,10;7:2;18:11;24:5;26:5
**pay (8)**
17:12,25;28:13,15,24;29:3,9,11
**paying (1)**
26:20
**payments (3)**
26:23,24;31:10
**Payroll (2)**
22:1,10
**PC (2)**
3:,8
**penalty (1)**
7:19
**PEO (1)**
12:16
**people (6)**
5:9,11;6:13;8:14;12:17;30:20
**per (2)**
10:24;26:17
**percent (2)**
24:23;32:1
**performed (1)**
16:25
**perjury (1)**
7:19
**PERKINS (2)**
3:18;6:11
**person (3)**
6:7;8:19;13:2
**personal (4)**
17:10;23:8,18;24:16
**personally (1)**
23:1
**pertinent (1)**
24:23
**petition (1)**
27:9
**Phoenix (6)**
0:;3:,16,20,24;34:13
**phone (3)**
4:7,8;5:15
**pick (1)**
32:6
**placed (1)**
13:2
**plan (5)**
17:9,25;18:1,4,8
**PLC (2)**
3:14,22
**please (15)**
4:7,23;5:1,15;6:1,2,8,24;7:7;8:7;15:17;23:22;24:19,20;28:21
**PLLC (1)**
22:3
**Plus (1)**
17:19
**PO (1)**
3:
**point (3)**
5:13;15:1;18:14
**pool (1)**
6:4
**portion (1)**
17:25
**posed (1)**
25:4
**position (2)**
11:10;13:3
**positive (1)**
18:7
**practice (2)**
18:14;26:10
**prepaid (1)**
26:21
**Prepared (2)**
0:;28:7
**preparing (1)**
18:3
**previously (1)**
34:
**print (1)**
34:5
**Prior (7)**
20:12;23:3;29:17;31:6,9,11,18
**privilege (3)**
25:1,2,3
**Pro (14)**
11:14,21;12:13,15,19,20;13:5,6,16,17,19,22;14:16,17
**Probably (2)**
26:1;32:13
**problem (3)**
17:7;33:6,9
**procedure (1)**
9:25
**proceed (1)**
15:18
**PROCEEDINGS (5)**
0:;3:1;34:,3,4
**proceeds (2)**
17:12;19:11
**process (2)**
12:3;16:2
**processed (1)**
26:13
**processing (1)**
11:24
**processor (1)**
11:11
**procure (1)**
10:21
**Professional (2)**
3:3;12:16
**prompted (1)**
10:19
**properly (2)**
9:21;10:7
**properties (10)**
16:3,13,17,17,20,21;17:1,2,11,12
**property (3)**
19:13;20:15,21
**provide (3)**
12:4,9,18
**provided (5)**
8:20;9:3,4,4,6
**providing (3)**
11:20,22;12:13
**public (8)**
12:14;23:13,23;24:4,7,12,13,17
**purchase (1)**
19:12
**purchased (1)**
12:10
**purposes (4)**
21:22,24;22:8,9
**put (5)**
9:21;12:2;13:2;16:15;24:20
**putting (1)**
13:9

**Q**

**qualified (1)**
28:11
**quick (1)**
32:25
**quickly (1)**
5:13

**R**

**R1035 (1)**
34:25
**raise (1)**
8:6
**Rancho (6)**
16:7;17:20;19:12;20:10,14,20
**re (1)**
0:
**read (4)**
9:8,20;10:11,14
**real (3)**
16:3;17:21;18:5

**really (2)** 5:13;12:25
**Realtor (4)** 16:15,17,23;17:3
**Realtors (1)** 16:14
**reason (6)** 7:22;20:18;21:9; 24:25;27:14,25
**reasons (1)** 31:8
**recall (6)** 25:17,22;28:17;29:7, 10,12
**receivables (1)** 22:20
**receive (2)** 25:13,16
**received (2)** 25:18;32:2
**receiving (2)** 10:24;11:5
**recognize (1)** 20:3
**recollect (1)** 8:3
**recollection (1)** 10:16
**record (11)** 5:23;19:22;23:13,23; 24:4,7,13,13,17;30:23; 34:
**recorded (3)** 5:14,21;34:4
**recording (3)** 4:1;7:8;33:24
**reduced (1)** 34:5
**referring (1)** 18:21
**reflect (1)** 32:23
**refuse (4)** 24:25;31:6,11,25
**refused (1)** 30:25
**regarding (1)** 12:5
**regardless (1)** 24:16
**Registered (2)** 3:3;34:
**related (11)** 10:21;27:22;28:4,13; 31:6,10,15,18,23;32:1; 34:6
**relevant (3)** 22:25;23:19;24:23
**remain (1)** 20:8
**remember (3)** 16:10;26:7,11
**rent (1)** 26:20
**reorganization (1)** 17:10
**repeat (1)** 4:22
**rephrase (1)** 30:5
**reported (1)** 3:2
**Reporter (3)** 3:3,4;34:
**REPORTER'S (2)** 0:;3:1
**Reporting (4)** 0:;34:,18,24
**represent (1)** 6:9
**requested (2)** 34:,8
**required (1)** 34:9
**reschedule (2)** 32:6,7
**rescheduled (1)** 32:8
**resetting (1)** 33:12
**resided (1)** 20:6
**residences (1)** 16:3
**restrict (2)** 31:24,24
**return (8)** 18:14;27:8,15,17,19, 21;28:7,14
**return's (1)** 27:9
**Revenue (1)** 17:14
**Review (4)** 34:,,8,9
**right (12)** 8:7,11;10:9;11:7; 13:16;14:24;15:17; 17:17;18:16,20;32:9; 33:3
**RJ (2)** 4:16,22
**Robert (1)** 3:11
**ROBERTA (4)** 3:;4:20,25;7:1
**round (1)** 15:14
**RPR (1)** 0:
**RRF (1)** 34:25
**ruling (1)** 31:15

**S**

**sales (1)** 18:9
**Sam (1)** 5:2
**same (5)** 9:23,24;29:22;30:18; 31:8
**saw (1)** 14:7
**saying (6)** 5:11;9:20;12:12,23; 13:8,15
**Schedule (8)** 10:23;16:4;20:19; 21:4,11,15;27:10,21
**scheduled (3)** 16:4;32:10,11
**schedules (10)** 8:16;16:21;20:13,24; 21:2;22:2,11;26:17; 27:2,4
**second (1)** 7:6
**SECTION (3)** 0:;3:2;4:10
**secure (1)** 18:17
**seems (1)** 31:16
**sell (1)** 17:11
**selling (1)** 12:14
**send (1)** 8:25
**sends (1)** 12:21
**separate (1)** 31:19
**Service (1)** 17:14
**Services (7)** 0:;11:21,23;12:12, 18;34:18,24
**set (2)** 34:,
**setting (1)** 33:11
**settlement (2)** 25:14,19
**settlements (1)** 25:12
**shareholders (1)** 13:24
**short (1)** 19:21
**shows (2)** 27:10,21
**shut (2)** 30:16,24
**signature (4)** 34:,,8,9
**single (1)** 13:23
**sitting (1)** 10:10
**skill (1)** 34:4
**slowly (1)** 4:23
**sold (1)** 30:20
**solemnly (1)** 8:7
**Solutions (5)** 21:12;29:18;30:9,12, 13
**somebody (3)** 13:13,13,14
**somehow (1)** 31:19
**somewhat (1)** 12:21
**somewhere (1)** 26:11
**Sorry (3)** 6:20,22;7:8
**speak (2)** 5:16,17
**speakerphone (4)** 5:18,19,20,22
**speaking (1)** 24:21
**Spell (1)** 5:1
**spoken (3)** 15:23;16:14,14
**start (4)** 4:17;5:12,25;11:4
**State (5)** 3:4;6:24;17:15; 26:13;34:1
**statement (3)** 9:24;16:4;21:8
**STATES (4)** 0:;20:19;21:11,15
**still (1)** 20:3
**Sub-Chapter (6)** 3:13;5:12;6:1,4;7:4,5
**subject (1)** 7:19
**Suite (3)** 3:,,
**SUNKIN (8)** 3:,11;4:20,20,24,25; 5:2;7:1
**supplemented (1)** 18:6
**supply (1)** 17:8
**supplying (1)** 17:6
**sure (3)** 9:11,21;15:19
**swear (1)** 8:7
**system (2)** 12:3,4

**T**

**talked (2)** 16:1;18:11
**talking (2)** 18:13;24:19
**tax (9)** 26:24;27:8,9,15,17, 19,21;28:14,18
**taxes (4)** 17:15,19,21;28:13
**telling (1)** 14:17
**temp (2)** 12:21,25
**temporary (1)** 12:22
**Tennessee (2)** 16:9;18:5
**term (1)** 28:9
**testify (2)** 7:23;8:2
**testimony (5)** 7:17,22;8:8;10:15; 31:23
**Thanks (2)** 19:1,4
**though (1)** 9:21
**Thursday (1)** 32:13
**Thursdays (1)** 32:7
**tie (1)** 32:14
**Today (5)** 4:12;7:18,23;8:3; 10:10
**total (2)** 21:17;22:4
**totally (1)** 31:19
**touch (1)** 16:15
**trade (1)** 11:17
**transcribed (1)** 34:
**TRANSCRIPT (3)** 0:;3:1;5:24
**transferred (2)** 24:9;25:9
**transfers (2)** 24:18,22
**true (1)**

34:
**trust (1)** 8:6
**Trustee (8)** 3:13;5:13;6:2,4;7:4,5;23:18;33:14
**Trustee's (1)** 23:7
**truth (3)** 8:9,9,9
**truthfully (2)** 7:23;8:2
**try (2)** 5:18;15:13
**trying (1)** 13:14
**turn (1)** 15:2
**two (5)** 18:5,9;21:17,21;22:4
**type (1)** 22:9
**typewritten (1)** 9:7
**typically (1)** 32:7
**typing (1)** 8:21

U

**under (7)** 7:18;8:1;18:1;20:3;25:1;30:16;34:5
**Unfortunately (1)** 5:20
**UNITED (1)** 0:
**unless (1)** 25:3
**Unlimited (12)** 11:15,21;12:13,15,19,20;13:6,16,17,19,22;14:17
**unsecured (1)** 17:23
**up (3)** 15:25;19:2,17
**use (3)** 17:12;19:20;21:16
**used (1)** 19:12
**Utility (3)** 29:18;30:8,13

V

**value (2)** 16:19,25
**values (1)** 16:20
**various (2)** 12:9;13:19
**verbally (1)** 9:4
**VOICE (2)** 33:16,20

W

**W-2s (2)** 14:13,23
**Waddell (1)** 3:12
**waiting (2)** 17:2,3
**waived (1)** 34:
**wants (1)** 5:23
**Water (1)** 18:22
**way (4)** 9:25;32:5;34:,6
**week (3)** 16:1,18;17:4
**what's (3)** 11:9;12:12;25:21
**whole (1)** 8:9
**within (1)** 34:10
**without (1)** 26:20
**WITNESS (1)** 2:2
**word (2)** 21:16;22:3
**work (7)** 10:21;12:22;13:3,6,17,20;32:21
**worker (2)** 14:9,15
**workers (1)** 12:22
**working (3)** 11:1,10;12:17
**works (1)** 33:9
**worth (1)** 16:22
**writing (1)** 9:4
**wwwglennie-reportingcom (1)** 0:

Y

**year (1)** 26:21
**years (3)** 21:17,21;22:4
**yell (1)** 5:16
**York (3)** 26:14;33:2,3

1

**10 (3)** 15:15,15;19:20
**10:00 (2)** 32:20,24
**10:30 (1)** 15:4
**100 (2)** 24:23;32:1
**1099 (1)** 14:12
**11 (2)** 0:;4:19
**1150 (2)** 3:,
**15 (1)** 2:4
**1555 (1)** 0:
**1850 (2)** 3:15,23
**19 (3)** 2:;27:4;29:13

2

**2 (1)** 34:12
**2:20-bk-06724-MCW (1)** 0:
**20 (1)** 2:5
**2000 (1)** 3:
**2015 (1)** 24:6
**2018 (12)** 27:8,11,15,17,19,21;28:14,18;29:14,15,16;32:3
**2019 (6)** 22:12,15;31:2,7,11,18
**2020 (3)** 0:;20:7;34:
**2-06724 (2)** 4:5,11
**21 (1)** 21:10
**233 (1)** 3:
**2901 (1)** 3:19

3

**30 (1)** 34:10
**30th (5)** 32:13,15,24;33:12;34:13
**33 (2)** 20:13,19
**341 (5)** 30:24;31:21,25;32:12,23
**341a (3)** 0:;3:2;4:10
**36 (2)** 18:7,9

5

**50885 (2)** 0:;34:17
**54 (1)** 26:16

6

**602.266.6535 (1)** 0:
**61 (2)** 21:15;22:2
**63 (1)** 22:11

7

**7-206 (2)** 34:12,19
**7-206F3 (1)** 34:
**7th (2)** 0:;4:12

8

**80 (1)** 3:9
**85004 (2)** 3:16,24
**85012 (2)** 3:,20
**85020-5130 (1)** 0:
**85355 (1)** 3:12

9

**9:30 (5)** 0:;4:13;32:13,17,19